UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| RED DOT BUILDINGS, INC. | CIVIL ACTION |
| VERSUS | NO. 14-2803 |
| GM&R CONSTRUCTION COMPANY INC., ET AL. | SECTION: R (4) |

## ORDER AND REASONS

Defendant Non-Flood Protection Asset Management Authority moves for summary judgment on M&M Concrete Services, Inc. and Tom Branighan, Inc.'s cross-claim that the Non-Flood Protection Authority is liable for certain unpaid claims of M&M Concrete and Tom Branighan arising out of a public works construction project under the Louisiana Public Works Act, Louisiana Revised Statute § 38:2241, *et seq.*[1] For the following reasons, the Court grants the Non-Flood Protection Authority's motion for summary judgment.

## I. BACKGROUND

This dispute arises out of the "James Wedell Hangar Project," a public works construction project, at the New Orleans Lakefront Airport. As owner

---

[1] R. Doc. 80.

of the project, defendant-in-cross-claim Non-Flood Protection Authority hired GM&R Construction Company to serve as general contractor.[2] GM&R, in turn, hired plaintiffs-in-cross-claim M&M Concrete (for concrete services) and Tom Branighan (for electrical services) as subcontractors.[3] The project began in March 2012, according to the Non-Flood Protection Authority's "Notice to Proceed."[4] Despite several delays, the project was substantially completed on May 16, 2014.[5] The Non-Flood Protection Authority filed a "Certificate of Substantial Completion" in the parish mortgage records on May 28, 2014.[6]

M&M Concrete and Tom Branighan both allege that they performed the work required under their respective subcontracts with GM&R, but were never fully paid. M&M Concrete contends that $56,572 for its concrete work remains unpaid.[7] Tom Branighan claims an unpaid balance of $49,729.20.[8]

---

[2]   R. Doc. 80-3 at 1 ¶ 3 (Declaration of Cornelia Ullmann).

[3]   *See generally* R. Doc. 80-7; R. Doc. 80-8.

[4]   R. Doc. 80-5.

[5]   R. Doc. 80-6.

[6]   R. Doc. 80-3 at 2 ¶ 7.

[7]   R.Doc. 27 at 7 ¶¶ 36-39.

[8]   R. Doc. 28 at 8 ¶¶ 38-41.

On August 18, 2014, M&M Concrete notified GM&R and the Non-Flood Protection Authority of its unpaid claims by mailing both entities a "Statement of Claim."[9] M&M Concrete's correspondence reflected that it had filed its statement of claim in the parish mortgage records on August 15, 2014.[10] M&M Concrete also asked the Non-Flood Protection Authority and GM&R to consider its August 18 letter as a "demand for immediate payment."[11]

Sometime before September 24, 2014, GM&R notified M&M Concrete that the statement of claim in the mortgage records was untimely because it was filed more than forty-five days after the Non-Flood Protection Authority filed its "Certificate of Substantial Completion" on May 28, 2014. According to the Non-Flood Protection Authority, GM&R considered the recorded claim untimely because Louisiana Revised Statute § 38:2242 states that "after maturity of [its] claim and within forty-five days after the recordation of acceptance of the work by the governing authority," a subcontractor seeking payment may file a statement of the unpaid amount in the mortgage

---

[9]   *See* R. Doc. 80-9.

[10]  *Id.* at 2.

[11]  *Id.* at 1.

records.[12]  La. Rev. Stat. § 38:2242(B).  M&M Concrete then notified the Non-Flood Protection Authority and GM&R that "[b]ecause of the timing, the Statement of Claim will be cancelled from the records of the Recorder of Mortgages.  However, M&M has not been paid in full and therefore M&M maintains its claim for payment on the project."[13]

Tom Branighan also wrote to GM&R and the Non-Flood Protection Authority about its unpaid claim on September 24, 2014.  The letter states, "Please consider this correspondence as a Statement of Claim being served on the Non-Flood Protection Asset Management Authority, the project's awarding authority (owner), in accordance with the Public Works Act, specifically LRS 28:2242(D)."[14]  At that time, Tom Branighan had not filed its statement of claim in the mortgage records.

On October 7, 2014, GM&R obtained a "Lien and Privilege Certificate" from the Orleans Parish Clerk of Court and Ex-Officio Recorder.[15]  The certificate provides that, according to the parish mortgage records at that time, "there [we]re no uncancelled mechanic's liens and/or privileges for

---

[12]   *See* R. Doc. 80-1 at 3.

[13]   R. Doc. 81-3 at 1.

[14]   R. Doc. 80-11.

[15]   R. Doc. 80-13.

labor and/or materials furnished in connection with" GM&R's construction contract for the James Wedell Hangar Project.[16]  This lien and privilege certificate did not reflect the claim that M&M Concrete filed two months earlier, presumably because M&M Concrete had cancelled it.

GM&R submitted the lien and privilege certificate to the Non-Flood Protection Authority on October 8.[17]  According to the Non-Flood Protection Authority, it was then obligated to pay GM&R under Louisiana Revised Statute § 38:2191, which provides that "[a]ll public entities shall promptly pay all obligations arising under public contracts when the obligations become due and payable under the contract."  Section 2191 further provides that "[a]ny public entity failing to make any final payments after formal final acceptance and within forty-five days following receipt of a clear lien certificate by the public entity shall be liable for reasonable attorney fees."  La. Rev. Stat. § 38:2191(B).  The Non-Flood Protection Authority contends that, in accordance with section 2191, it promptly paid GM&R on October 16, 2014, after receiving the lien and privilege certificate on October 8.

---

[16]     *Id.* at 1.

[17]     R. Doc. 80-2 at 3 ¶ 15.

On December 24, 2014, M&M Concrete again wrote to GM&R and the Non-Flood Protection Authority about its unpaid claim. M&M Concrete indicated that cancelling its earlier filing in the parish mortgage records "may have been in error," and M&M Concrete refiled its claim in the mortgage records on December 23, 2014. M&M Concrete's December 24 letter asked GM&R and the Non-Flood Protection Authority to "consider this Statement of Claim as demand for payment in full of the amount owed."[18] Tom Branighan also formally filed its statement of claim in the parish mortgage records on December 23, 2014, and mailed a copy of its filed claim to both GM&R and the Non-Flood Protection Authority the next day.[19] To date, M&M Concrete's and Tom Branighan's claims remain unpaid.

The subcontractors filed suit against the Non-Flood Protection Authority to recover the amounts of their unpaid claims on April 13, 2015. The Non-Flood Protection Authority now moves for summary judgment, arguing that, under the Louisiana Public Works Act, M&M Concrete and Tom Branighan untimely filed their claims and therefore cannot recover their unpaid debts from the Non-Flood Protection Authority.[20] M&M

---

[18]     R. Doc. 80-10 at 1.

[19]     *See* R. Doc. 80-10.

[20]     *See generally* R. Doc. 80-1.

Concrete and Tom Branighan oppose the motion, arguing that the Non-Flood Protection Authority became liable for the subcontractors' debts when the Authority had actual knowledge of their unpaid claims before it paid GM&R for the project in October 2014.

## II. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). When assessing whether a dispute as to any material fact exists, the Court considers "all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could

not lead a rational trier of fact to find for the non-moving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

## III.  DISCUSSION

The material facts are not in dispute here.  The parties disagree about the proper interpretation of Louisiana Revised Statute § 38:2242, which imposes liability on the awarding authority of a public works project if it pays a general contractor for that project without taking certain precautions to protect an unpaid subcontractor.

Section 2242 provides in relevant part:

> A.    "Claimant" . . . means any person to whom money is due pursuant to a contract with the owner or a contractor . . . for doing work, performing labor, or furnishing materials or supplies for the construction, alteration, or repair of any public works . . . .
>
> B.    Any claimant may after the maturity of his claim and within forty-five days after the recordation of acceptance of the work by the governing authority . . . file a sworn statement of the amount due him with the governing authority having the work done and record it in the office of the recorder of mortgages for the parish in which the work is done.
>          . . . .
>
> D.    When an awarding authority makes final payment to the contractor without deducting the total amount of *all outstanding claims so served on it* or without obtaining a bond from the contractor to cover the total amount of all outstanding claims, the awarding authority shall become liable for the amount of these claims.

La. Rev. Stat. § 38:2242(A)-(B), (D) (emphasis added).

Here, the Non-Flood Protection Authority argues that subsection 2242(D) must be read along with subsection 2242(B)—an "outstanding claim so served on [the awarding authority]" is one that a claimant has filed in the mortgage records "after the maturity of his claim and within forty-five days after recordation of acceptance of the work." The subcontractors argue that subsections (B) and (D) provide separate means by which a claimant may pursue an unpaid debt from the awarding authority. Thus, according to M&M Concrete and Tom Branighan, to preserve a claim against an awarding authority for an unpaid debt, a public works claimant can either, under subsection 2242(B), file its claim in the mortgage records within forty-five days after the awarding authority records its acceptance of the work or, under subsection 2242(D), otherwise notify the awarding authority of the claimant's outstanding claim before the authority issues final payment to the general contractor. The Court concludes that subsections 2242(B) and (D) must be read together and that the only "outstanding claims" for which an awarding authority of a public works project may be liable are those that have been timely filed with the governing authority.

"The fundamental question in all cases of statutory [interpretation] is legislative intent and the reasons that prompted the legislature to enact the

law." *In re Whitaker Const. Co.*, 411 F.3d 197, 204-05 (5th Cir. 2005) (citing *In re Succession of Boyter*, 756 So.2d 1122, 1128 (La. 2000)).  The starting point is the language of the statute itself.  *Moreno v. Entergy Corp.*, 105 So.3d 40, 48 (La. 2012).  "Words and phrases shall be read [in] context and shall be construed according to the common and approved usage of the language."  La. Rev. Stat. § 1:3.  "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written."  La. Civ. Code art. 9; La. Rev. Stat. § 1:4; *see also In re Whitaker*, 411 F.3d at 205 ("[S]tatutes must be interpreted . . . to render their meaning rational, sensible, and logical.").  When the statutory language is ambiguous, a court must determine its meaning "by examining the context in which [the language] occurs and the text of the law as a whole."  La. Civ. Code art. 12.  The court "should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless."  *In re Whitaker*, 411 F.3d at 205.  In addition, the law "must be interpreted as having the meaning that best conforms to the purpose of the law."  La. Civ. Code art. 10.

The purpose of the Louisiana Public Works Act is two-fold.  First, the Act protects those not in direct privity with the governing authority or the general contractor of a public works project.  *Wilkin v. Dev Con Builders,*

*Inc.*, 561 So. 2d 66, 71 (La. 1990); *see also In re Whitaker*, 411 F.3d at 205 (explaining protection is necessary because unpaid claimants cannot seize public property to secure payment). At the same time, for a governing authority that complies with its provisions, the Act protects the authority from incurring liability for a contractor's failure to perform its subcontracts. *Wilkin*, 561 So. 2d at 71.

Section 2242 of the Act achieves both purposes by allowing a claimant to collect its unpaid debt from the governing authority if that authority does not take certain precautions to ensure the claimant is paid. Yet an unpaid claimant must also take certain steps to preserve its claim; the imposition of liability on the governing authority is not without limits.

For a claimant seeking to recover his unpaid claim from the governing authority, subsection 2242(B) requires, at a minimum, that the claimant "file a sworn statement of the amount due him with the governing authority" "after the maturity of his claim and within forty-five days after the recordation of acceptance of the work." *See generally* La. Rev. Stat. § 38:2242(B). Subsection 2242(D) provides that an awarding (or governing) authority may be liable for "all outstanding claims so served on it." Subsection 2242(B) and subsection 2242(D) do not stand alone, as M&M Concrete and Tom Branighan suggest. Here, subsection (D)'s reference to

claims "so served" means served by the method stated in subsection (B). *See generally* La. Civ. Code art. 12 (courts must examine statutory language in context and "examin[e] . . . the text of the law as a whole"); La. Rev. Stat. § 1:3 ("Words and phrases shall be read with their context . . . ."). To read subsection (D) as the subcontractors suggest would delete the word "so" before "served." Further, to construe subsection 2242(D) as allowing a claimant to notify a governing authority of its outstanding claim however and whenever it chooses, so long as the governing authority has not yet paid the general contractor, would render subsection 2242(B), with its specific requirements, meaningless. *See In re Whitaker*, 411 F.3d at 205 ("Courts should give effect to all parts of a statute and should not adopt a statutory construction that makes any part superfluous or meaningless."). Moreover, the doctrine of *ejusdem generis*, a well-established principle of statutory construction, warns against "expansively interpreting" broad language that follows narrow and specific terms. "To the contrary, this maxim . . . counsels courts to construe the broad in light of the narrow, in a commonsense recognition that general and specific words, when present together, are associated with and take color from each other." *United States v. Insco*, 496 F.2d 204, 206 (5th Cir. 1974) (collecting cases).

At least one Louisiana appellate court has reached the same conclusion regarding the interaction of subsections 2242(B) and (D). In *Gulf Coast Refrigeration, LLC v. Houma Terrebone Housing Authority*, the state trial court found that a subcontractor who filed its claim outside of the forty-five-day window of time in subsection 2242(B) could not sustain a claim against the Houma Terrebone Housing Authority, the governing authority of the public works project at issue. *See* No. 2013 CA 1512, 2014 WL 1175898, at *1 (La. App. 1 Cir. Mar. 24, 2014). On appeal, the subcontractor in *Gulf Coast* argued, like M&M Concrete and Tom Branighan do here, that subsection 2242(D) allowed the subcontractor more time to file its claim so long as the governing authority had not yet paid the contractor. *See id.* at *3. The Louisiana First Circuit Court of Appeal held that the subcontractor's argument was "a misreading of the statute and . . . ignore[d] what is clearly required by La. R.S. 38:2242(B)." *Id.*; *see also In re Whitaker Const. Co., Inc.*, 411 F.3d 197, 206 (5th Cir. 2005) ("[Section] 2242 *mandates* that a claimant file written claim statements after the maturity of his claims and within 45 days from the recordation of acceptance." (emphasis added)). The court also explained that the subcontractor's interpretation of the statute "would essentially render La. R.S. 38:2242(B) pointless if it meant that a

subcontractor could secure funds with an untimely filed lien." 2014 WL 1175898, at *3.

To resist this conclusion, M&M Concrete and Tom Branighan rely on another Louisiana appellate opinion. In *VVP America, Inc. v. Design Build Development Services, Inc.*, a roofing subcontractor recorded its claim nearly one year after the governing authority recorded its certificate of substantial completion. 951 So. 2d 461, 464-65 (La. App. 2 Cir. 2007). The Louisiana Second Circuit Court of Appeal noted that "the different notice provisions under the [Louisiana Public Works Act] are designed to work in tandem so that the general contractor, surety and owner are all aware of what is going on and each can take steps to preserve their rights against each other." *Id.* at 469. Nonetheless, without referring to the text of the statute and relying on two nearly century-old cases, the court held that a governing authority with actual knowledge of an unpaid claim and with enough funds to satisfy the debt is liable to the subcontractor for the unpaid amount.[21] *Id.*

---

[21] The cases on which the Louisiana Second Circuit relied are even less helpful to the relevant issue. In *Uvalde Rock Asphalt Co. v. City of Shreveport*, 172 La. 977 (1931), the appellant argued that the claims of certain materialmen were not recorded "in accordance with law." The alleged noncompliance pertained to whether the amounts claimed were for materials actually used in the public work and whether the claims were "in proper form" (*i.e.*, sworn statements). The Louisiana Supreme Court found the appellant's arguments "unsound." *See id.* at 984-85.

at 469-70. In light of the statutory text and the reasoning of the Louisiana First Circuit in *Gulf Coast Refrigeration*, the Court does not find *VVP America* to be persuasive or controlling here.

It is undisputed that M&M Concrete and Tom Branighan did not timely file their claims in accordance with subsection 2242(B). The Non-Flood Protection Authority recorded its acceptance of work, via its "Certificate of Substantial Completion," in the mortgage records on May 28, 2014. At the earliest, M&M Concrete served the Non-Flood Protection Authority with a sworn statement of its claim on August, 18, 2104, nearly three months later. Tom Branighan did not serve the Authority with its claim until September 24.[22] Because M&M Concrete and Tom Branighan failed to comply with the

---

In *Fidelity & Deposit Co. v. Claiborne Parish School Board*, 35 F.2d 376 (W.D. La. 1929), the district court found that the parish school board with actual knowledge of unpaid subcontractor claims was liable for those debts under general principles of civil law—"a tort or quasi offense and breach of contract within the meaning of the code." On appeal, the Fifth Circuit affirmed, finding that as a result of the bond executed by the governing authority, the general contractor, and the surety, as well as prevailing civil law principles and "general principles of equity," the governing authority was liable to the surety for the amount of the unpaid claims that the surety paid to subcontractors. *Claiborne Parish School Board v. Fidelity & Deposit Co.* 40 F.2d 577 (5th Cir. 1931).

[22]   The Non-Flood Protection Authority emphasizes in its brief that claimants seeking to recover from a governing authority must file its claim with the authority *and* record its claim in the mortgage records within the forty-five-day period. *See generally* R. Doc. 80-1. Because it is undisputed that M&M Concrete and Tom Brangihan did neither within forty-five days of

applicable deadline, the Court grants summary judgment on the cross-claim for their outstanding debts against the Non-Flood Protection Authority.

## IV.   CONCLUSION

For the foregoing reasons, the Court GRANTS the Non-Flood Protection Authority's motion for summary judgment.

New Orleans, Louisiana, this 28th day of March, 2016.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

---

the Non-Flood Protection Authority's acceptance of the work, the Court need not reach the issue of whether timely recordation of their unpaid claims is also required to recover from the Authority.